**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| AVID TECHNOLOGY, INC.,<br><br>                Plaintiff,<br><br>      v.<br><br>MEDIA GOBBLER, INC.,<br><br>                Defendant. | Civil Action No. 14-13746 |

## COMPLAINT

Plaintiff Avid Technology, Inc. ("Avid"), by and through its undersigned attorneys, for its Complaint against Defendant Media Gobbler, Inc. ("Gobbler"), states and alleges as follows:

## NATURE OF THE ACTION

1.      This is an action to cease Gobbler's unlawful use and misappropriation of Avid's valuable intellectual property rights.  Avid seeks damages and injunctive relief against Gobbler for copyright infringement, trademark infringement, false designation of origin, false advertising, and unfair competition in violation of federal law, as well as state and common law claims for breach of contract, trade secret misappropriation, and tortious interference with the contractual obligations of four former Avid employees who are now employed by Gobbler.

## PARTIES, JURISDICTION, AND VENUE

2.      Avid is a Delaware corporation, with its principal place of business at 75 Network Drive, Burlington, Massachusetts 01803.  Avid is the company behind *Pro Tools*®, the industry-leading audio production platform.

3.      Upon information and belief, Gobbler is a Delaware corporation, with its principal place of business at 6427 West Sunset Boulevard, Hollywood, California 90028.

4.      This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, and 1367.

5.      This Court has personal jurisdiction over Gobbler because Gobbler: (1) transacts business in the Commonwealth of Massachusetts; (2) contracts to supply services or things in the Commonwealth of Massachusetts; and (3) has caused tortious injury in the Commonwealth of Massachusetts.  Gobbler is further subject to this Court's personal jurisdiction because Gobbler has agreed to submit to the exclusive jurisdiction of the state and federal courts in and of the Commonwealth of Massachusetts for the subject matter of this action.

6.      Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred, and is occurring, in this District.

## FACTS COMMON TO ALL COUNTS

### *Avid, Its Pro Tools® Digital Audio Workstation, and Its Valuable Intellectual Property*

7.      Avid is the world's leading provider of audio and video technology for media organizations and independent professionals.  Avid's products and services are used to create, distribute, and monetize the most prestigious and award-winning films, videos, music recordings, TV shows, live concerts, and news broadcasts.  Avid's industry-leading solutions include its Pro Tools®, Media Composer®, ISIS®, Interplay®, and Sibelius® products.

8.      Avid's contributions to the state of the art have resulted in extensive accolades and recognition, including the most prestigious awards in the media industry.  For example, Avid has received two Oscar statuettes, a Grammy award, and fourteen Emmy awards, including the Philo T. Farnsworth Corporate Achievement Award.

9.      Avid's Pro Tools hardware and software goods are used extensively by professionals throughout the audio industry for recording and editing in music production, film

scoring, film and television post production, musical notation, and MIDI sequencing.  Avid's Pro Tools software product can run either as standalone software or can be used with a range of Pro Tools-branded hardware components.

10.     The Pro Tools software program was initially released in 1991.  Over the past 23 years, Avid has continued to improve its Pro Tools software and hardware to make it the leading music recording and audio production platform it is today.

11.     Like Avid's other products, the Pro Tools platform has received extensive industry recognition, including an Oscar statuette and a Grammy award.  Avid's solutions also are used to create the most recognized and loved media in the world.  For example, Avid's audio solutions were used to create numerous Grammy award winning and nominated projects, including the 2014 winners for Album of the Year, Record of the Year, Song of the Year, and Best Engineered Album.  The impact of the Pro Tools platform in the film world is similarly acclaimed.  For example, the Pro Tools platform was used to create the 2014 Oscar winners in the categories of Best Sound Editing, Best Sound Mixing, and Best Original Song.

12.     When a user records or imports audio using Pro Tools software, Pro Tools generates a file containing the audio track and other data, referred to as a "Pro Tools Session File."  Pro Tools Session Files are saved in a proprietary format called ".ptf".  The .ptf file format supports many options for session compatibility and transfer.

13.     Because the Pro Tools platform is the audio production industry standard, third parties in the industry want their products and services to function seamlessly with the Pro Tools platform.  Avid developed a Pro Tools Session File Format Software Development Kit ("SDK") to provide an interface to create, open, and manipulate Pro Tools Session Files.  Avid licenses

the Pro Tools Session File Format SDK to its development partners to enable them to integrate their technology, tools, and services with Pro Tools software.

14.     Pro Tools and the Pro Tools Session File Format SDK were developed by Avid, using a team of software architects, engineers and computer scientists, all of whom promised not to use or divulge the confidential and proprietary information Avid was developing in connection with these proprietary programs.  Among the individuals who worked on the development of the Pro Tools platform are four former Avid employees, Bobby Lombardi, Bob Brown, Andrew Hall, and Brian Chrisman, each of whom had access to Avid's confidential and proprietary trade secret information.  Each of whom now work for Gobbler in a competitive role.

15.     Until recently, Gobbler licensed limited rights from Avid to use the confidential, proprietary, trade secret and copyright-protected Pro Tools Session File Format SDK.  This allowed Gobbler users to facilitate the back up and transfer of Pro Tools files within Gobbler's file sharing service.  Any limited rights Gobbler had to use any of Avid's intellectual property no longer exist.

### Avid's Pro Tools Trade Secrets and Copyrights

16.     The Pro Tools Session File Format SDK (that was licensed to Gobbler) is an embodiment and direct result of know-how and confidential and proprietary trade secrets belonging to Avid relating to the design, development, implementation, and operation of Pro Tools platform, including scientific, technical, merchandising, production, and management information, data, designs and processes, as well as procedures, formulas, inventions, and improvements related to the Pro Tools Session File Format ("the Pro Tools Trade Secrets").

17.     Avid takes steps to protect its confidential and proprietary trade secret information, including access to the Pro Tools Trade Secrets.  This information is not generally

available to those outside of Avid, and the information is extremely valuable because it is not generally known.

18.     The Pro Tools Trade Secrets are accessible only by those having a legitimate business reason for needing such information and who agree to keep the information confidential.

19.     Avid safeguards the Pro Tools Trade Secrets in many ways, including by requiring employees to execute agreements that include obligations to keep such information confidential and by restricting access to the information.

20.     In addition to being the result of knowledge about some of the Pro Tools Trade Secrets, the Pro Tools Session File Format SDK is an original work of authorship fixed in a tangible medium of expression protected by the copyright laws of the United States.

21.     Avid owns all rights to the Pro Tools platform and the Pro Tools Session File Format SDK.

22.     The Pro Tools Session File Format SDK has been registered with the United States Copyright Office under U.S. Registration Nos. TXU1909355 (2012 version) and TXU1909353 (2013 version).  A true and correct copy of the Copyright Office's online record for each registration is attached hereto, as Exhibits A and B, respectively, and is incorporated herein by reference.

23.     The intellectual property associated with the Pro Tools platform and the Pro Tools Session File Format SDK is valuable to Avid.

***Avid's Trademark Rights***

24.     In addition to its trade secret and copyright intellectual property rights, Avid uses a number of trademarks in connection with its business and the products and services it offers.

25.     Since 1989, Avid has used the house mark "AVID" in connection with its audio and video technology goods and services throughout the United States.

26.     Avid's rights in and to the AVID mark are embodied, in part, in the following United States trademark registrations:

| Mark | Reg. No. | Reg. Date | Goods/Services |
|---|---|---|---|
| **AVID** | 1,686,100 | May 12, 1992 | Computer hardware; namely, computers, video digitizers, audio digitizers, analog to digital audio converters, National Television Standard Code to Red-Green-Blue synchronization video and audio signal converters, video and signal converters, synchronization generators, video local area network controllers, video monitor controllers, monitors; computer programs for use in video editing |
| **AVID** | 3,154,131 | Oct. 10, 2006 | Apparatus for recording, transmission or reproduction of sound and images; Cables and fibres for the transmission of sounds and images; Computer peripherals; Computer programs for editing images, sound and video; Computer software for processing digital music files; Computer software for use in relation to digital animation and special effects of images; Loudspeakers; Microphones; Music-composition software; Sound mixers |
| **AVID** | 3,154,132 | Oct. 10, 2006 | Design, development and implementation of software; Installation of computer software; Technical support services, namely, troubleshooting of computer hardware and software problems |
| **AVID** | 3,304,280 | Oct. 2, 2007 | Books in the field of audio, video, film, music, and computers; manuals in the field of audio, video, film, music, and computers; pencils; pens; writing pads |

| Mark | Reg. No. | Reg. Date | Goods/Services |
|------|----------|-----------|----------------|
| **AVID** | 3,920,040 | Feb. 15, 2011 | Consulting services in the field of video production services and film, audio and video production services; entertainment services, namely, providing a website featuring musical performances, videos, film clips, photographs and other multimedia materials; online journals, namely, blogs featuring information about advertising media, entertainment and information technology; providing online training, namely, seminars, classes and workshops in the field of editing sounds and images, animation, and special effects |
| **AVID** | 4,154,274 | June 5, 2012 | Business consulting and information services in the fields of computer hardware, computer software, computer peripherals, entertainment, music, audio, television, film, broadcast, video, gaming, 3D, special effects and animation; Business research and surveys in the fields of computer hardware, computer software, computer peripherals, entertainment, music, audio, television, film, broadcast, video, gaming, 3D, special effects and animation; On-line retail store services featuring computer hardware, computer software, peripherals, musical instruments, audio equipment, and video equipment |

| Mark | Reg. No. | Reg. Date | Goods/Services |
|------|----------|-----------|----------------|
|  | 3,905,003 | Jan. 11, 2011 | Apparatus for recording, transmission or reproduction of sound and images; Cables and fibres for the transmission of sounds and images; Computer peripherals; Computer programs for editing images, sound and video; Computer software for processing digital music files; Computer software for use in relation to digital animation and special effects of images; Computer storage devices, namely, computer memory hardware and hard drives; Loudspeakers; Microphones; Amplifiers; Headphones; Music-composition software; Sound mixers; Musical Instruments; electronic musical keyboards; Business consulting and business information services in the fields of computer hardware, computer software, computer peripherals, entertainment, music, audio, television, film, broadcast, video, gaming, 3D, special effects and animation; Business research and surveys in the fields of computer hardware, computer software, computer peripherals, entertainment, music, audio, television, film, broadcast, video, gaming, 3D, special effects and animation; On-line retail store services featuring computer hardware, computer software, peripherals, musical instruments, audio equipment, and video equipment; Operation of a business for others, namely, operating media, entertainment, or information technology facilities; Outsourcing in the field of media, entertainment, and information technology; Installation of audio-visual apparatus; Installation of computer networks; Installation of computer systems; Computer education training services; Training services in the field of editing sounds and images, animation, and special effects; Consulting services in the field of video production services and film, audio and video production services; entertainment services, namely, providing a website featuring musical performances, videos, film clips, photographs and other multimedia materials; online journals, namely, blogs featuring information about advertising media, entertainment and information technology; providing online training, namely, seminars, classes and workshops in the field of editing sounds and images, animation, and special effects; Design, development and implementation of software; Installation of computer software; Technical support services, namely, troubleshooting in the nature of diagnosing computer hardware and software problems |

27.     Since 1991, Avid has also used the mark "PRO TOOLS" in connection with its audio production hardware and software goods throughout the United States

28.     Avid's rights in and to the PRO TOOLS mark are embodied, in part, in U.S. Registration No. 1,917,664, issued on September 12, 1995, for the mark PRO TOOLS for "Audio production equipment; namely, computer hardware and computer programs for audio production."

29.     The registrations identified in Paragraphs 26 and 28 above are valid and subsisting.  A true and correct copy of the certificate for each registration is attached hereto, as Exhibits C through J, respectively, and is incorporated herein by reference.

30.     U.S. Registration Nos. 1,686,100, 1,917,664, 3,154,131, 3,154,132, and 3,304,280 are incontestable pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065.

31.     Since at least as early as 2010, Avid has used the following design as a trademark to identify its hardware and software products originating exclusively from Avid:



(the "Pro Tools Logo," and together with the AVID mark and PRO TOOLS mark, the "AVID Marks").

32.     Through continuous use of the Pro Tools Logo in the United States, Avid has developed and owns common law rights to the Pro Tools Logo as a trademark in connection with audio production hardware and software goods.

33.     As a direct result of the considerable time and effort Avid has invested in promoting its audio and video technology-related goods and services featuring the AVID Marks,

Avid's customers, its competitors, and the relevant consuming public have come to associate the high quality goods and services offered by Avid under the AVID Marks with the AVID Marks.

34.     As a direct result of Avid's use and promotion of the AVID Marks, the AVID Marks have become valuable assets of Avid, one which signifies to the consuming public a standard of high quality audio and video technology-related goods and services originating exclusively from Avid.

35.     The AVID Marks and the goodwill associated therewith are also valuable assets of Avid.

### Gobbler's Business & Its Relationship With Avid

36.     Gobbler was founded in March, 2010.  Gobbler holds itself out as "an intelligent cloud based digital media service" that provides "solutions and tools to enable intelligent storage, collaboration, and project organization."

37.     In February, 2011, Gobbler launched its cloud-based file sharing service, which allows media creators to manage their digital media.  Gobbler offers online software for backing up, transferring, organizing, and managing audio project files.  Gobbler's file sharing service is marketed primarily as an online collaboration tool for musicians.

38.     To further its objective as an online collaboration tool for musicians, on or about August 10, 2012, Gobbler licensed material from Avid.  Gobbler and Avid entered into a Software Development Kit License Agreement (the "SDK Agreement").  A true and correct copy of the SDK Agreement is being provisionally filed under seal herewith as Exhibit K, and is incorporated herein by reference.

39.     Pursuant to the SDK Agreement, Avid granted Gobbler a limited license to use the Avid Pro Tools Read-Only Session File Format and certain documentation to enable

Gobbler's file sharing service to read a Pro Tools Session File, so that a user can backup and transfer Pro Tools Session Files.

40.     In exchange for the limited license rights, Gobbler made a number of promises to Avid.

41.     ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

42.     ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

43.     ████████████████████████████████████████████

████████████████████

44.     ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

45.     ████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████

46.     ████████████████████████████████████████████

47.     ████████████████████████████████████████████████

████████████████████████████████████

48. ███████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████

***Gobbler Poaches Four Key Avid Employees***

49.     Shortly after Avid announced that it was building its own online collaboration

functionality (which would render the Gobbler platform largely irrelevant) on or about May 15,

2014, Gobbler recruited and hired four Avid employees, Bobby Lombardi, Bob Brown, Andrew

Hall, and Brian Chrisman (the "Former Avid Employees"), to join Gobbler.  Each of the Former

Avid Employees had significant exposure to and development of the Pro Tools Trade Secrets and

the Pro Tools platform.

50.     The Former Avid Employees had a combined employment record with Avid of

more than 55 years and the materials and knowledge they developed for Avid is valuable, so

much so that Gobbler is looking to trade upon it in any way it can.  For example, the "Team"

web page on the Job Portal of Gobbler's website specifically touts all of the Former Avid

Employees' lengthy experience with Avid (and its former division, Digidesign).  True and

correct copies of screen shots from the Team web page on Gobbler's Jobs Portal, as they

appeared on September 27, 2014, are attached collectively hereto as Exhibit L, and are

incorporated herein by reference.

51.     Mr. Lombardi had been with Avid more than 15 years.  During his tenure, he was

involved in the design and development of many of Avid's best-selling products, including Pro

Tools software and hardware.  At the time of his resignation, he held the title of Director of

Product Design – Artist and Storage Products, and was the Design Lead for Avid's planned

online collaboration functionality for the Pro Tools software—functionality that would ultimately compete with Gobbler's file sharing service.

52.     Mr. Brown had been with Avid more than 14 years, and held the title of Consulting Engineer – Audio Video Collaboration Architect.  He also worked on the Pro Tools software, driving integration and interchangeability of Pro Tools software and Avid's other products.  He was instrumental in developing the Pro Tools Session File Format SDK and he was also involved with Mr. Lombardi in developing the planned online collaboration functionality for the Pro Tools software.

53.     Mr. Hall had been with Avid for almost 14 years, and held the title of Senior Consulting Engineer.  Specifically, he was the lead software architect for the Pro Tools software development team and spent 12 years developing the product.  Mr. Hall worked on major features in every Pro Tools software release since 2000.  He was consulted with Mr. Brown on the development of the Pro Tools Session File Format SDK

54.     Mr. Chrisman had been with Avid for more than a decade, and held the title of Senior Principal Software Development Engineer.  He, too, was involved in the development of the planned online collaboration functionality for the Pro Tools software

55.     In discharging their responsibilities as Avid employees, each of the Former Avid Employees gained access to Avid's confidential and proprietary information, trade secrets, and know-how, including the Pro Tools Trade Secrets.

56.     As a result of the Former Avid Employees' employment with Avid, the Former Avid Employees were, and are, uniquely and intimately familiar with Avid's confidential and proprietary trade secret information including information concerning the design, development, implementation, and operation of Pro Tools platform and the Pro Tools Session File Format

SDK, as well as Avid's secret scientific, technical, merchandising, production, and management information, designs, processes, procedures, formulas, inventions, and improvements.  Each had access to and knew of the Pro Tools Trade Secrets.

57.     Each of the Former Avid Employees promised in writing not to use or divulge any of Avid's confidential and proprietary information, including the Pro Tools Trade Secrets.  They did so when they were hired, and did so again when they resigned from Avid to go to Gobbler.

58.     By way of example, Mr. Lombardi signed an Invention and Nondisclosure Agreement on or about August 4, 1997, in which he agreed that all information and know-how of a private, secret, or confidential nature concerning Avid's business or financial affairs is the exclusive property of Avid, and that he would not disclose such information either during or after his employment with Avid.

59.     Mr. Lombardi confirmed those promises upon his resignation.  ██████████ ████████████████ at that time, Mr. Lombardi signed a Release Agreement, dated June 4, 2014, in which he acknowledged that during his employment with Avid he had obtained confidential, proprietary, and trade secret information of Avid, including information relating to Avid's products, plans, designs, and other valuable confidential information.  He agreed not to use or disclose any such confidential information.

60.     Mr. Lombardi is now employed by Gobbler as its Senior Vice President, Product.

61.     Mr. Brown also signed an Invention and Nondisclosure Agreement, dated April 26, 1999, in which he agreed that all information and know-how of a private, secret, or confidential nature concerning Avid's business or financial affairs is the exclusive property of Avid, and that he would not disclose such information either during or after his employment with Avid.

62.    When Mr. Brown resigned from Avid, ███████████████████████

███  He also signed an agreement, dated May 22, 2014, in which he acknowledged that during

his employment with Avid he had obtained confidential, proprietary, and trade secret information

of Avid, including information relating to Avid's products, plans, designs, and other valuable

confidential information, and agreed not to use or disclose any such confidential information.

63.    Mr. Brown is now employed by Gobbler as its Vice President of Engineering.

64.    Mr. Hall also agreed to keep Avid's confidential and proprietary information

confidential.  He signed an Invention and Nondisclosure Agreement, dated July 5, 2000, in

which he agreed that all information and know-how of a private, secret, or confidential nature

concerning Avid's business or financial affairs is the exclusive property of Avid, and that he

would not disclose such information either during or after his employment with Avid.

65.    When he resigned, ████████████████████████████  And, he

signed an agreement, dated May 23, 2014, in which he acknowledged that during his

employment with Avid he had obtained confidential, proprietary, and trade secret information of

Avid, including information relating to Avid's products, plans, designs, and other valuable

confidential information, and agreed not to use or disclose any such confidential information.

66.    Mr. Hall is employed by Gobbler a Software Architect.

67.    Mr. Chrisman also signed an non disclosure agreement, dated September 26,

2010, in which he agreed that all information and know-how concerning: (i) Avid's business or

financial affairs, (ii) Avid's research and development or investigation activities, and (iii) the

business relations and affairs of any of Avid's clients, customers, vendors, and suppliers, that is

not generally known to the public, industry, or trade is the exclusive property of Avid, and that

he would not disclose such information either during or after his employment with Avid.

68.     When Mr. Chrisman resigned, ███████████████████████████████
And when he resigned, Mr. Chrisman signed an agreement, dated May 23, 2014, in which he
acknowledged that during his employment with Avid he had obtained confidential, proprietary,
and trade secret information of Avid, including information relating to Avid's products, plans,
designs, and other valuable confidential information, and agreed not to use or disclose any such
confidential information.

69.     Mr. Chrisman is employed by Gobbler as a Software Architect.

70.     The trade secrets and confidential information to which the Former Avid
Employees had access would provide an unfair advantage if improperly used for, or disclosed to,
Gobbler, or if used by a Gobbler employee in furtherance of Gobbler's competitive interests.

71.     On June 9, 2014, Avid sent Gobbler a written notice indicating that it would not
be renewing the SDK Agreement.  The letter further provided that any permission to use the
AVID Marks which may have been granted would also terminate on the same date as the SDK
Agreement.

72.      Gobbler's Chief Executive Officer contacted Avid shortly after receiving the
June 9 letter, indicating that Gobbler had received the letter.

73.     In accordance with the June 9 notice, the SDK Agreement terminated on August
10, 2014.

***Gobbler's Unlawful Conduct***

74.     Although the SDK Agreement has been terminated, and Gobbler no longer has
any rights to use any of Avid's intellectual property, Gobbler continues to do so.

75.     Gobbler continues to suggest to members of the consuming public that it is
affiliated with Avid, when, in fact, no such affiliation exists.

76.     By way of example, the AVID Marks are displayed on Gobbler's web site, including the AVID house and logo marks, the PRO TOOLS trademark, and the Pro Tools Logo mark.  True and correct copies of such use are attached hereto as Exhibits M-S, and are incorporated herein by reference.

77.     One of the reasons that Gobbler is still using the AVID Marks prominently on the site is because, upon information and belief, Gobbler is either continuing to use the Pro Tools Session File Format SDK without a license or has used the confidential and proprietary information it gained access to pursuant to the SDK Agreement and/or the confidential and proprietary information, trade secrets, and know-how possessed by the Former Avid Employees to develop an equivalent to the Pro Tools Session File Format SDK that either infringes Avid's intellectual property rights or misappropriates those intellectual property rights, or both.

78.     The Pro Tools Session File Format SDK enables the integration of the Pro Tools software with Gobbler's file sharing service.  This allows Pro Tools audio files to be managed, backed up, and distributed directly through Gobbler's file sharing service from within the Pro Tools software interface.  Gobbler continues to market and promote its file sharing service as being integrated with the Pro Tool platform, a functionality that is not possible without either Gobbler's continued unauthorized use of the Pro Tools Session File Format SDK, or the unauthorized use of Avid's confidential and proprietary information, trade secrets, and know-how.

79.     There can be little doubt that Gobbler is using Avid's intellectual property in direct violation of Avid's rights.  Gobbler promotes its file sharing service on its website, claiming that "Gobbler is integrated directly into Pro Tools & SONAR, and supports all major DAWs, so you can work seamlessly without interrupting your flow."  Ex. M (a true and correct

copy of a screen shot from a promotional web page on Gobbler's website, as it appeared on September 27, 2014).  These statements are misleading because Gobbler is no longer authorized to integrate its file sharing service with Avid's Pro Tools platform.

80.     Gobbler continues to boast that its file sharing service is compatible with Pro Tools software, prominently featuring both the Pro Tools Logo, as a "Supported DAW [digital audio workstation]," and the AVID Logo, as a "Sample Integration," without Avid's permission. Ex. N (a true and correct copy of a screen shot from the "Features" web page on Gobbler's website, as it appeared on September 27, 2014).  These statements are also misleading because the license granted by Avid that permitted Gobbler to make its file sharing service compatible with the Pro Tools platform has been terminated, and any continued use of the previously licensed software and/or the Pro Tools Trade Secrets by Gobbler is unlawful.

81.     The "Tutorials" web page on Gobbler's website includes a "Featured Tutorial" regarding Gobbler's "Pro Tools Integration."  Gobbler invites website visitors to "[s]ee how Gobbler's integration with Avid Pro Tools(r) [sic] makes sending and backing up sessions of any size easy, fast and foolproof!"  Ex. O (a true and correct copy of a screen shot of the Tutorials web page from Gobbler's website, as it appears on September 27, 2014).  Yet Gobbler has no rights to do so, or make any such representation to the public.

82.     The "Technology" web page on Gobbler's Developer Portal also promotes the integration of the Gobbler service into Avid's Pro Tools software, i.e., "Our REST-Based APIs are mature, easy to implement and have been integrated into many of the top audio applications like Avid Pro Tools . . . ," again using the AVID Marks without authorization to create a false association between Avid's and Gobbler's products and services.  Ex. P (a true and correct copy

of a printout of the Technology web page from Gobbler's Developer Portal, dated September 27, 2014).

83.     The "Company" web page on Gobbler's Developer Portal also attempts to trade off of the goodwill and reputation of Avid and its products and services in stating that "Once integrated, you'll earn 15% of all subscription revenue from your users.  There's a reason top DAWs like Pro Tools, SONAR and others have chose to integrate Gobbler."  Ex. Q (a true and correct copy of a printout of the Company web page from Gobbler's Developer Portal, dated September 27, 2014).

84.     On both the "About Gobbler" web page of Gobbler's website and the "Progress" web page of Gobble's Jobs Portal, Gobbler brags that "100,000+ music makers in over 122 countries use Gobbler across two desktop clients, a mobile app, and inside popular DAWs like Pro Tools[.]"  Exs. R and S (a true and correct copy of a screen shot of the About Gobbler web page from Gobbler's website and a screen shot of the Progress web page from Gobbler's Jobs Portal, as each appeared on September 27, 2014).  Gobbler continues, "We've established key partnerships with Avid . . . ," notwithstanding the fact that Gobbler's partnership with Avid has been terminated.

85.     Avid has asked Gobbler to stop using its intellectual property to no avail.

86.     Despite repeated requests, Gobbler has refused to: (a) acknowledge that the SDK Agreement and the license granted to Gobbler thereunder has terminated; (b) confirm that it has, or that it will by a date certain, cease its use of the Pro Tools Session File Format SDK and Avid's intellectual property related thereto; (c) confirm that Gobbler will discontinue the use of any AVID Marks in connection with Gobbler's products and services; (d) confirm whether it has instructed the four former Avid employees it now employs not to disclose Avid confidential and

proprietary information, trade secrets, and know-how to Gobbler or to otherwise use Avid

information on Gobbler's behalf; or (e) confirm that it will not induce any of the Former Avid

Employees to violate their confidentiality obligations and other continuing contractual duties to

Avid, leaving Avid with no choice but to seek judicial relief.

**COUNT I**
**Copyright Infringement**
**(17 U.S.C. §§ 101 *et seq.*)**

87.     Avid incorporates by reference each and every allegation contained in Paragraphs

1 through 86 of this Complaint as though fully set forth herein.

88.     Avid owns all rights, title, and interest in and to the copyrights to the Pro Tools

Session File Format SDK.

89.     The registrations for the Pro Tools Session File Format SDK, identified in

Paragraph 22 above, are valid and subsisting.

90.      Gobbler has willfully infringed Avid's exclusive rights, in violation of 17 U.S.C.

§§ 106 and 501, by copying and using the Pro Tools Session File Format SDK without

authorization from Avid.

91.     As a direct and proximate result of Gobbler's infringing activities, Avid has

suffered and will continue to suffer damages in an amount that is not presently ascertainable, but

will be established at trial.

92.     As a direct and proximate result of the foregoing infringing activities, Gobbler has

been unjustly enriched and Avid has been injured and damaged.  Unless such activities are

enjoined by this Court, Gobbler will continue its ongoing acts of copyright infringement and

Avid will continue to suffer irreparable injury and damage.

## COUNT II
## Federal Trademark Infringement
## (15 U.S.C. §§ 1114 and 1125(a))

93.     Avid incorporates by reference each and every allegation contained in Paragraphs 1 through 92 of this Complaint as though fully set forth herein.

94.     Avid's use of the AVID Marks predates any alleged use by Gobbler in the United States.

95.     Gobbler's unauthorized use of the AVID Marks in connection with its file sharing service is likely to cause confusion, to cause mistake, or to deceive as to the source or sponsorship of Gobbler's goods and services and the sponsorship or endorsement of those goods or services by Avid.

96.     Gobbler's unauthorized use of the AVID Marks in connection with its file sharing service is likely to cause confusion, to cause mistake, or to deceive as to the source or sponsorship of Avid's goods and services and the sponsorship or endorsement of those goods or services by Gobbler.

97.     Gobbler's unauthorized use of the AVID Marks is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Gobbler or Gobbler's goods, services, or commercial activities with Avid or Avid's goods, services, or commercial activities, or as to the origin, sponsorship, or approval of Gobbler's goods, services or commercial activities by Avid.

98.     Gobbler's unauthorized use of the AVID Marks is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Avid or Avid's goods, services, or commercial activities with Gobbler or Gobbler's goods, services, or commercial activities, or as to the origin, sponsorship, or approval of Avid's goods, services or commercial activities by Gobbler.

99.     The acts of Gobbler complained of herein constitute trademark infringement in violation of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a).

100.     The acts of Gobbler complained of herein were committed willfully and deliberately, in bad faith, with full knowledge of Avid's rights, and with the intention of deceiving and misleading the public and causing harm to Avid.

101.     As a direct and proximate result of Gobbler's infringing activities, Avid has suffered and will continue to suffer damages in an amount that is not presently ascertainable, but will be established at trial.

102.     As a direct and proximate result of the foregoing infringing activities, Gobbler has been unjustly enriched and Avid has been injured and damaged. Unless such activities are enjoined by this Court, Gobbler will continue its ongoing acts of trademark infringement and Avid will continue to suffer irreparable injury and damage.

## COUNT III
### False Designation of Origin, False Advertising, and Federal Unfair Competition
### (15 U.S.C. § 1125(a))

103.     Avid incorporates by reference each and every allegation contained in Paragraphs 1 through 102 of this Complaint as though fully set forth herein.

104.     Gobbler has misappropriated and continues to misappropriate Avid's substantial property rights in the AVID Marks, as well as the goodwill associated therewith.

105.     Gobbler's unauthorized use of the AVID Marks, in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or origin of its goods, services, or commercial activities.

106.     Gobbler's use of the AVID Marks on its website and in connection with its file sharing service is a false or misleading statement of fact in a commercial advertisement about a product or service.

107.    Gobbler's use of the AVID Marks in interstate commerce in connection with its file sharing service has either deceived or has the capacity to deceive a substantial segment of potential consumers, and such deception is material, in that it is likely to influence the consumers' purchasing decisions.

108.    Gobbler's use of the AVID Marks is competing unfairly with Avid.

109.    Unless restrained and enjoined by this Court, Gobbler's conduct will permit Gobbler to gain an unfair competitive advantage over Avid and allow Gobbler to improperly interfere with Avid's continued promotion and expansion of its business.

110.    Gobbler's acts complained of herein constitute false designation of origin, false advertising, and federal unfair competition, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

111.    Gobbler's acts complained of herein were committed willfully and deliberately, in bad faith, with full knowledge of Avid's rights, and with the intention of deceiving and misleading the public and causing harm to Avid.

112.    Gobbler's acts complained of herein were committed willfully and deliberately, in bad faith, with full knowledge of Avid's rights, and with the intention of misappropriating and wrongfully trading upon the valuable goodwill and reputation of Avid and the AVID Marks.

113.    As a direct and proximate result of Gobbler's infringing and unlawful acts, Avid has suffered and will continue to suffer damages in an amount that is not presently ascertainable, but will be established at trial.

114.    Gobbler's acts complained of herein have caused and, unless enjoined by this Court, are likely to continue to cause Avid to suffer irreparable injury and damage.

## COUNT IV
## Breach of Contract – SDK Agreement

115.     Avid incorporates by reference each and every allegation contained in Paragraphs 1 through 114 of this Complaint as though fully set forth herein.

116.     Avid and Gobbler knowingly and voluntarily entered into the SDK Agreement for good and valuable consideration.

117.     The SDK Agreement is a valid, binding, and enforceable agreement.

118.     Gobbler has breached the SDK Agreement in at least the following particulars:

(a)     by continuing to use Avid's confidential and proprietary information, which is contained in the Pro Tools Session File Format SDK;

(b)     by using Avid's trademarks without prior written consent;

(c)     ███████████████████████████████████████ ████

(d)     ████████████████████████████████

(e)     ██████████████████████████████████████ ██████

119.     The breaches by Gobbler set forth above in Paragraph 118 are material.

120.     Upon information and belief, notwithstanding the termination of the SDK Agreement and the license granted therein, Gobbler is continuing to backup and transfer Pro Tools Session Files in the same manner that it was prior to termination of the SDK Agreement, as it did under the terms of the license.

121.     Avid fully performed its duties and obligations under the SDK Agreement.

122.     Gobbler's breach has and continues to damage Avid in an amount that is presently not ascertainable, but will be established at trial.

123.     Gobbler will continue to breach the SDK Agreement, and Avid will be irreparably harmed thereby, unless such activities are enjoined by this Court.

**COUNT V**
**Misappropriation of Trade Secrets**
**(Mass. Gen. Laws ch. 93, § 42)**

124.     Avid incorporates by reference each and every allegation contained in Paragraphs 1 through 123 of this Complaint as though fully set forth herein.

125.     Massachusetts law renders unlawful the taking of trade secrets, pursuant to the General Laws of Massachusetts Chapter 93, Section 42.

126.     Avid expends a tremendous amount of time, effort, and resources to obtain and develop its trade secrets, including the Pro Tools Trade Secrets.

127.     Avid takes, and has taken, active steps to maintain the secrecy of its trade secrets, including the Pro Tools Trade Secrets.

128.     The Pro Tools Trade Secrets are not generally known, nor are they a matter of public knowledge.

129.     Avid derives independent economic value from the Pro Tools Trade Secrets because they are not generally known, nor are they readily ascertainable by proper means by those that could obtain economic value from the disclosure or use of the Pro Tools Trade Secrets.

130.     The Pro Tools Trade Secrets are trade secrets within the meaning of General Laws of Massachusetts Chapter 266, Section 30 and General Laws of Massachusetts Chapter 93, Section 42.

131.     Through the SDK Agreement, Gobbler had access to and became aware of a significant volume of confidential and proprietary trade secret information belonging to Avid, including, but not limited to, the Pro Tools Trade Secrets.

132.    By entering into the SDK Agreement, Gobbler knew that its knowledge of Avid's trade secrets was acquired under circumstances giving rise to a duty to maintain the secrecy of that information, both during, and subsequent to, the license term for the Pro Tools Session File Format SDK.

133.    Upon information and belief, Gobbler has stolen, unlawfully taken, concealed, or copied, or by fraud or deception obtained with the intent to convert to its own use, the Pro Tools Trade Secrets and continues to do so, by using the Pro Tools Session File Format SDK without license or permission, or by using the Pro Tools Trade Secrets it obtained pursuant to the SDK Agreement and/or through the Former Avid Employees to develop an equivalent to the Pro Tools Session File Format SDK that either infringes or misappropriates Avid's intellectual property rights.

134.    As a direct and proximate result of these acts of misappropriation of Avid's trade secrets, Gobbler has damaged and continues to damage Avid in an amount that is presently not ascertainable, but will be established at trial.

135.    Gobbler will continue to misappropriate Avid's trade secrets, and Avid will be irreparably harmed thereby, unless such activities are enjoined by this Court.

**COUNT VI**
**Unfair or Deceptive Trade Practices**
**(Mass. Gen. Laws ch. 93A, § 1 *et seq.*)**

136.    Avid incorporates by reference each and every allegation contained in Paragraphs 1 through 135 of this Complaint as though fully set forth herein.

137.    The Massachusetts Consumer Protection Act renders unlawful unfair practices, including unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce, pursuant to the General Laws of Massachusetts Chapter 93A, Section 2(a).

138.    At the time Gobbler engaged in the acts complained of herein, Gobbler was engaged in trade or commerce as defined in the General Laws of Massachusetts Chapter 93A, Section 1(b).

139.    Gobbler's practices as set forth herein constitute unfair practices in violation of the Massachusetts Consumer Protection Act, as they are likely to deceive and mislead the public.

140.    As a direct and proximate result of the foregoing unlawful actions of Gobbler, Gobbler has been unjustly enriched and Avid has been injured and damaged.

141.    Gobbler's acts complained of herein were committed willfully, with full knowledge of Avid's rights, and with the intention of causing harm to Avid.

142.    As a direct and proximate result of Gobbler's unfair practices, Avid has been damaged in an amount to be determined at trial, and, pursuant to the General Laws of Massachusetts Chapter 93A, Section 11, Avid is entitled to injunctive relief, multiple damages, and recovery of its attorneys' fees in connection with this action.

143.    Unless the foregoing actions of Gobbler are enjoined, Avid will continue to suffer irreparable injury and damage.

## COUNT VII
### Tortious Interference with Contractual Relations
### (Common Law of Massachusetts)

144.    Avid incorporates by reference each and every allegation contained in Paragraphs 1 through 143 of this Complaint as though fully set forth herein.

145.    As set forth in Paragraphs 57-68, above, Avid had agreements with each of the Former Avid Employees in which the Former Avid Employees each expressly agreed not to use or disclose the confidential, proprietary, and trade secret information he obtained during his employment with Avid and to return such information to Avid at the end of his employment.

146.    Gobbler knew, or should have known, of the existence of the Former Avid Employees' obligations in the agreements referenced in Paragraphs 57-68.

147.    Upon information and belief, despite such knowledge, Gobbler intentionally and improperly permitted, caused, encouraged, and induced the Former Avid Employees to breach the obligations in the agreements referenced in Paragraphs 57-68.

148.    Upon information and belief, Gobbler illegally induced the Former Avid Employees to use Avid's confidential, proprietary, copyrighted, and trade secret information including the Pro Tools Trade Secrets for the benefit of Gobbler.

149.     Upon information and belief, the Former Avid Employees have disclosed or, will inevitably disclose, Avid's confidential, proprietary, copyrighted, and trade secret information and know-how to Gobbler.

150.    Upon information and belief, Gobbler unlawfully and knowingly caused and induced the Former Avid Employees to violate their contractual obligations to Avid, including their obligations with respect to Avid's property, privacy, and security, and their obligations with respect to Avid's intellectual property, including inventions, trade secrets, copyrights, and confidential information.

151.    The acts of Gobbler complained of herein constitute tortious interference with Avid's rights under the agreements with the Former Avid Employees, in violation of the common law of Massachusetts.

152.    Gobbler's interference with the Former Avid Employees' contracts with Avid and the obligations contained therein, in addition to being intentional, was improper in motive or means in that Gobbler sought to injure Avid, to gain an unfair competitive advantage, and to

unfairly reap the benefits of Avid's efforts in developing and maintaining its confidential, proprietary, and trade secret information.

153.    As a direct and proximate result of these acts of tortious interference, Gobbler has damaged and continues to damage Avid in an amount that is presently not ascertainable, but will be established at trial.

154.    Upon information and belief, Gobbler will continue to tortiously interfere with Avid's contractual relations, and Avid will be irreparably harmed thereby, unless such activities are enjoined by this Court.

**COUNT VIII**
**Trademark Infringement and Unfair Competition**
<u>**(Common Law of Massachusetts)**</u>

155.    Avid incorporates by reference each and every allegation contained in Paragraphs 1 through 154 of this Complaint as though fully set forth herein.

156.    The acts of Gobbler complained of herein constitute trademark infringement and unfair competition in violation of the common law of Massachusetts.

157.    Gobbler's unauthorized use of the AVID Marks as described above has caused, is causing and, unless enjoined by this Court, will continue to cause confusion and mistake in the marketplace and deception of the trade and public as to the relationship or affiliation of the Gobbler with Avid and the source, origin, or sponsorship of their respective products and services.

158.    Gobbler's unauthorized use of the AVID Marks as described above has impaired, is impairing, and, unless enjoined by this Court, will continue to impair Avid's reputation, and has caused, is causing, and, unless enjoined by this Court, will continue to cause injury and damage to Avid for which Avid is entitled to relief under the common law.

159.    The acts of Gobbler complained of herein were committed willfully and deliberately, in bad faith, with full knowledge of Avid's rights, and with the intention of deceiving and misleading the public and causing harm to Avid.

160.    As a direct and proximate result of Gobbler's unlawful activities complained of herein, Avid has suffered and will continue to suffer damages in an amount that is not presently ascertainable, but will be established at trial.

161.    As a direct and proximate result of the foregoing unlawful activities of Gobbler, Gobbler has been unjustly enriched and Avid has been injured and damaged.  Unless such activities are enjoined by this Court, Gobbler will continue its ongoing acts of trademark infringement and unfair competition, and Avid will continue to suffer irreparable injury and damage.

## PRAYER FOR RELIEF

WHEREFORE, Avid respectfully prays that this Court:

A.    Enter judgment for Avid on all of its claims;

B.    Enjoin and restrain Gobbler, its agents, servants, employees, attorneys, and all others in active concert or participation with Gobbler, during the pendency of this action, and permanently thereafter, from:

(1)    using, copying, and distributing the Pro Tools Session File Format SDK;

(2)    using the AVID Marks, or any other name or mark that is confusingly similar to the AVID Marks, or any other mark or designation of Avid or its affiliates, including, but not limited to, use of the AVID Marks in or on signs, banners, advertisements, coupons, websites, photographs posted on internet

websites, videos posted on internet websites, metatags, marketing materials, or anywhere else in connection with Gobbler's business;

(3)     doing any other act or thing likely to confuse, mislead, or deceive others into believing that Gobbler, or its products or services, emanate from, or are connected with, sponsored by or approved by Avid; and

(4)     using any Avid trade secret or confidential or proprietary information or know-how, including the Pro Tools Trade Secrets;

C.     Order that all Internet web sites, online advertising, marketing, promotions, or other online materials bearing the AVID Marks which are owned or controlled by Gobbler be removed permanently;

D.     Order that all property of Avid retained by Gobbler in violation of Section 12.3 of the SDK Agreement be returned immediately to Avid;

E.     Order Gobbler, pursuant to 15 U.S.C. § 1116(a), to file with the Court and serve on Avid's counsel within 30 days after service of the injunction, a written report, sworn under oath, setting forth in detail the manner and form in which Gobbler has complied with the injunction;

F.     Declare that Gobbler's unauthorized use of the Pro Tools Session File Format SDK infringes Avid's copyrights in and to the Pro Tools Session File Format SDK;

G.     Declare that Gobbler's unauthorized use of the AVID Marks infringes Avid's rights in and to the AVID Marks;

H.     Declare that Gobbler's copyright and trademark infringement was knowing, intentional, deliberate, and willful;

      I.      Award Avid compensation for any and all damages, injury, or harm incurred as a result of Gobbler's unlawful conduct;

      J.      Order full restitution and/or disgorgement of all profits and benefits that may have been obtained by Gobbler as a result of its wrongful conduct;

      K.      Award Avid treble damages resulting from Gobbler's willful and intentional conduct;

      L.      Award Avid punitive and exemplary damages;

      M.      Assess the costs and attorneys' fees incurred by Avid in this action against Gobbler; and

      N.      Enter any and all other relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Civil Rule 38(b), Avid hereby requests a trial by jury.

Dated:  September 30, 2014

By: /s/ *Christopher M. Morrison*

Christopher M. Morrison
BBO #651335
cmorrison@jonesday.com
JONES DAY
100 High Street, 21st Floor
Boston, MA  02110
Telephone:  +1.617.960.3939
Facsimile:  +1.617.449.6999

Meredith M. Wilkes (*pro hac vice* to be filed)
mwilkes@jonesday.com
David B. Cochran (*pro hac vice* to be filed)
dcochran@jonesday.com
Angela R. Gott (*pro hac vice* to be filed)
agott@jonesday.com
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114.1190
Telephone:  +1.216.586.3939
Facsimile:  +1.216.579.0212

*Counsel for Plaintiff*
AVID TECHNOLOGY, INC.

CLI-202259506