UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AVID TECHNOLOGY, INC.,
    Plaintiff,

    v.                                                    CIVIL ACTION NO. 14-13746-PBS

MEDIA GOBBLER, INC.,
    Defendant.

ORDER ON PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS (#136).

KELLEY, U.S.M.J.

**I. Introduction**

Familiarity with the facts of this case as set out in the court's Order regarding #131, Gobbler's motion to strike, (# 216) is presumed.

Avid filed this motion to compel (#131) and Gobbler responded (#151). Avid replied (#159) and on January 19, 2016, the court heard oral argument on the motion. After the hearing, Avid filed a Notice of Supplemental Authority regarding its motion (#168) and Gobbler replied (#180). On February 9, Avid filed a second Notice of Supplemental Authorities (#196-2) and on February 11, Gobbler replied (#207).

**II. Avid's Motion to Compel**

    **A. Communications between Chris Kantrowitz and Attorney Rafter**

In 2012 Gobbler and Avid entered into a license agreement that allowed Gobbler to use Avid's Pro Tools Session File Format Software Development Kit ("SDK") and later, Avid gave Gobbler permission to use its trademarks and logos. (#151 at 2.) On June 9, 2014, Avid

informed Gobbler that it was terminating the SDK agreement as of August 10, 2014. (#168 at 2.) On August 27, 2014, Avid reminded Gobbler by letter that the SDK agreement had been terminated, asked Gobbler to return the SDK, destroy all copies of it, stop using the SDK, and stop using all Avid logos. *Id*. After Chris Kantrowitz, Gobbler's CEO, received the letter from Avid, he asked Attorney Heather Rafter to contact attorneys for Avid to see if any issues could be worked out. *Id*. at 3. A series of communications between Attorney Rafter and counsel for Avid ensued. *Id*. at 3-4. Disputes were not resolved, and Avid filed this case on September 30, 2014. *Id*.

In October 2015, Avid deposed Mr. Kantrowitz, in his individual capacity and also as Gobbler's Rule 30(b)(6) witness. (#151-1 at 4; *See* #204 for excerpts of his testimony.)[1] At his deposition, Mr. Kantrowitz testified to statements he made to Attorney Rafter, who was a business consultant to Gobbler but who also acted as Gobbler's attorney at certain times. (#151-1 at 3.) He stated that in August 2014 he received the above-mentioned letter from Avid, notifying him that the SDK agreement had been terminated and instructing him, among other things, to return or destroy the SDK and to take Avid's logos off Gobbler's website. He said that he asked Attorney Rafter to call counsel for Avid and speak to them, to say something to the effect of, "hey, what do you need us to do so that you're satisfied with the result?" (#136 Exh. C at 563, 565).

At the deposition, when Mr. Kantrowitz was asked whether he returned the SDK, as the

---

[1] Avid attached excerpts of the transcript of Mr. Kantrowitz's deposition to its motion, *see* #137 Exh. C. The court requested a more complete copy of the transcript (#189) which was provided by Avid and is now docketed under seal as #204. Unfortunately the "more complete" transcript (#204) did not contain certain pages that were in the original transcript, (#137). Therefore both documents are cited here.

letter requested, he stated: "I said to Heather [Rafter] 'you just tell us what you need us to do with this because we'd be more than happy to return the SDK or destroy all copies of the SDK. Like, we never used it in the first place. So whatever needs to be done to satisfy them, I'm more than happy to do.'" (#204 at 546.)  When Mr. Kantrowitz was pressed on whether anyone at Gobbler destroyed the electronic access that Gobbler had to the SDK, he went on to explain that as Attorney Rafter was negotiating with Avid's counsel, it became clear that Avid was determined to sue Gobbler, and "the advice I was getting from our attorneys was 'don't touch anything because they could view that as you trying to destroy evidence.'" (#204 at 565-66, 567 (saying the same thing).)

When asked whether he instructed anyone at Gobbler to remove Avid's logos from the website, he said, "I was also informed by Heather or my lawyers 'don't touch the website because that will be considered destroying evidence.'" (#204 at 574; 575 (saying the same thing).)  He continued:

> So, you what, [sic] and what I remember was, this happened.  Heather started talking to John Given [counsel for Avid].  It was like 'okay.  We should take the logos down.'  'I'm like, fine.  No problem.'
> And then the next thing I know I'm being told 'don't take the logos down because if you do, it will be seen as destroying evidence.'  And so I was, like, 'okay.  Well let me know when we can.'  So and then we took them down.

(#204 at 576.)

Gobbler produced a privilege log in which it identified documents relating to communications between Gobbler and Attorney Rafter that took place starting in June 2014 regarding Avid's termination of the SDK agreement.  (#154 Exh. 5.)  Avid seeks production of certain of the entries that it believes concern communications between Mr. Kantrowitz and Attorney Rafter about which Mr. Kantrowitz testified.  (#168 at 5.)  The Court ordered Gobbler

3

to produce those entries for in camera inspection, and they did.

Avid argues that Gobbler must provide the documents "as they concern communications between Gobbler and Ms. Rafter about which Mr. Kantrowitz testified: Gobbler's claim that it never used Avid's Pro Tools SFF SKD, its decision not to return or destroy the Pro Tools SFF SDK, the preservation of the Gobbler website, the timing of the changes to Gobbler's website, including the removal of Avid's logos and trademarks, and Gobbler's failure to remove the Pro Tools SFF SDK from the Gobbler Git repository." (#168 at 5.) Avid asserts that the documents are not privileged, and even if they are, Mr. Kantrowitz expressly or implicitly waived the privilege by testifying to the substance of his communications without any objection from his counsel, who was present at the deposition. (#136 at 4-9.)

### B.  Materials generated by expert Michael Edge

Avid also moves to compel Gobbler to produce all documents created by Michael Edge. Mr. Edge is a non-testifying expert for Gobbler, who attended the deposition of Avid's Rule 30(b)(6) witness, Christopher Gahagan. (#151 at 5.) Gobbler asserts that because of the expected technical nature of Mr. Gahagan's testimony, Mr. Edge attended the deposition to assist Gobbler's counsel, Heather Boice, in questioning Mr. Gahagan. Mr. Edge passed Attorney Boice notes during the deposition to assist her in questioning the witness. *Id.* at 6.

Gobbler argues that Mr. Edge's notes are protected "under the work product doctrine of Rule 26(b)(3)(A) and the non-testifying expert exception under Rule 26(b)(4)(D)." (#151-1 at 1-2.) Plaintiff argues that Gobbler has not established that the documents are work product, or if they are, the privilege was waived when counsel for Gobbler used the notes that Mr. Edge created during the deposition to question the witness, because counsel's use of the notes

4

constituted "public disclosure" of the alleged work product. (#137 at 10.)

In a supplemental filing, Avid argues that because Mr. Edge works for the same company as Geoff A. Cohen, who is a testifying expert for Gobbler and has produced an expert report, the notes that Mr. Edge created during the deposition and any other information Mr. Edge "exchanged" with Dr. Cohen are discoverable under Rule 26(a)(2)(B). (#196-2 at 1-2.)

Finally, Avid moves that the court order Gobbler to pay its expenses in bringing the motion. (#136 at 1.)

### III. Mr. Kantrowitz's Deposition Testimony

#### A. Law concerning attorney-client privilege

The claims will be analyzed under the federal common law of privilege. Fed. R. Evid. 501, *see In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003) (hereinafter "*XYZ Corp.*"). Defendants, who are invoking the privilege, bear the burden of establishing that the privilege applies, by a fair preponderance of the evidence. *State of Maine v. United States Dep't of the Interior*, 298 F.3d 60, 71 (1st Cir. 2002); *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 190 F.R.D. 287, 289 (D. Mass. 2000).

Wigmore set out the elements of the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser (8) except the protection be waived.

*Cavallaro v. United States*, 284 F.3d 236, 245 (1st Cir. 2002) (quoting 8 J. H. Wigmore, *Evidence* § 2292, at 554 (McNaughton rev. 1961)).

The attorney-client privilege extends to communications between corporate officers and in-house counsel, but the communications must relate to legal matters, not business strategy or

negotiation. *United States v. Windsor Capital Corp.*, 524 F.Supp.2d 74, 81 (D. Mass. 2007) (privilege does not apply when in-house counsel is engaged in nonlegal work which includes business or technical advice unrelated to any legal issues).

Communications must "have been intended to be confidential and made for the purpose of giving or obtaining legal advice" to qualify as privileged. *City of Springfield v. Rexnord Corp.,* 196 F.R.D. 7, 9 (D. Mass. 2000). Disclosing attorney-client communications to a third party undermines the privilege. *Cavallaro,* 284 F.3d at 247; *Pacamor Bearings, Inc. v. Minebea Co., Ltd.,* 918 F.Supp. 491, 511 (D.N.H. 1996) (quoting *Smith v. Conway Org., Inc*., 154 F.R.D. 73, 78 (S.D.N.Y. 1994)). *See also XYZ Corp.*, 348 F.3d at 22.

### B. Analysis of issue pertaining to Mr. Kantrowitz's testimony

The entries in question are numbered 1 through 43 on the privilege log.[2] The documents span the time period from June 23, 2014 to September 26, 2014. After careful review of the documents, the court concludes that defendant has established that they are privileged, as they consist of communications between attorneys and employees of Gobbler seeking or receiving legal advice.[3] Contrary to Avid's argument, Attorney Rafter was without question functioning as legal counsel to Gobbler with respect to these communications.

The question then is whether Mr. Kantrowitz waived the privilege in the course of his

---

[2] The documents are email chains. Many of them overlap, some, multiple times. One could say that there are actually about thirteen documents at issue.

[3] One of the documents, no. 17, is not privileged, and Gobbler represents this was provided to Avid. Email communications that were sent to counsel for Avid are attached to several of the privileged emails. These emails to Avid are not privileged, and Gobbler represents that they have been provided to Avid. There are a very few brief, non-privileged emails that appear to be personal and are obviously irrelevant to this litigation. There is one email of a business nature that is also obviously irrelevant.

testimony at his deposition. The First Circuit has cautioned that because the attorney-client privilege is "highly valued," "courts should be cautious about finding implied waivers." *XYZ Corp*, 348 F.3d at 23. Claims of waiver "must be evaluated in principles of logic and fairness," demanding "a fastidious sifting of the facts and a careful weighing of the circumstances," such that it is "not surprising that the case law reveals few genuine instances of implied waiver." *Id.* Waivers "are almost invariably premised on fairness concerns." *Id.* So, for example, if a person relies on an attorney's advice as an element of a claim or defense, it is unfair to permit them to hide behind the privilege and not reveal the totality of what their attorney told them. *Id. See also United States v. Desir*, 273 F.3d 39, 45 (1st Cir. 2001) (waiver analysis is fact-intensive and based on "less-than-definitive standard of fairness") (collecting cases).

      Here, Mr. Kantrowitz, in what can only be characterized as a textbook example of how *not* to testify at a deposition, answered questions in a repetitive, disorganized way, rambling on about his own views, what he said to his attorneys, and what his attorneys said to him, all without any meaningful objection from his own attorney, who was present. (*See*, e.g. #204 at 564-568.) He said, multiple times, that Attorney Rafter or "the lawyers" told him not to do certain things, such as take Avid's logos off the website, because it would be seen as destruction of evidence. (#204 at 566, 567, 574, 575.)

      Gobbler argues that because Mr. Kantrowitz only repeated "conclusory legal advice from his attorneys," he did not waive the attorney-client privilege, citing *Trustees of Boston University v. Everlight Electronics Co, Ltd*, 2015 WL 3407555 (D. Mass. May 27, 2015). (#151 at 16.) The decision does not exactly stand for this proposition. In *Everlight,* the court explained that the law is not clear concerning "partial waivers" of privilege, citing cases that hold that the

privilege is waived when a party "discloses just part of an attorney-client communication or merely gives the [attorney's] conclusion," and others that hold the opposite - that the privilege is *not* waived when "a client merely discloses a summary or conclusions of the attorney's legal opinions." *Id*. at *3-4 (citing cases). Notwithstanding the murkiness of the case law, the court in *Everlight* found waiver in that case, because the client clearly testified to the conclusions of her attorney regarding a report the attorney had prepared as to potential patent infringement, and because the client deliberately waived confidentiality with regard to the report, as she testified about it after consulting about the attorney-client privilege with an attorney who was present for her testimony. *Id*. at *5. The court went on, however, to find that the scope of the waiver was limited only to the report in question, because the client was not "trying to benefit from the disclosure, by, for example, using it as part of an advice-of-counsel defense." *Id*. at *6, citing *XYZ Corp*, 348 F.3d at 24 (scope of implied waiver is "almost invariably premised on fairness concerns.")

Here, if Mr. Kantrowitz waived the attorney-client privilege with regard to any communications, it was only with regard to his repeated statements that Attorney Rafter or "the lawyers" told him not to destroy the electronic access that Gobbler had to Avid's SDK or take Avid's logos down from Gobbler's website, because such actions would be seen as "destruction of evidence." His other assertions, for example, things that he said to his attorneys, such as, that he told attorneys that he would be happy to return the SDK to Avid, (#204 at 564), do not open the door for Avid to discover all his communications with his attorneys concerning those points, for the simple reason that he did not reveal anything his attorneys said to him.

However, whether Mr. Kantrowitz might be said to have waived the attorney-client

privilege with respect to certain things he did not do, because an attorney warned him that such action could be considered "destruction of evidence," is of no consequence here. As Gobbler repeatedly states in its response to Avid's first supplemental filing, none of the privileged documents that Avid seeks to discover relate to this alleged advice. (#180 at 1, 12, 15.)

The "fairness concerns" that are explored in the cases, where courts do not permit a litigant to use the attorney-client privilege as both a "sword and a shield," *see,* e.g., *Desir*, 273 F.3d at 45, are not implicated here. Gobbler is not using the alleged advice that Mr. Kantrowitz received to gain any advantage in the case. Gobbler has not raised a defense of counsel defense (#62 at Affirmative Defenses 1-38) and states repeatedly that it is not pursuing such a defense. *(See,* e.g., #180 at 12, 13, 14.) Whether any attorney did or did not tell Mr. Kantrowitz not to disturb the website or destroy or return the SDK in the relatively short time period between August 27, 2014, when Avid sent the warning letter to Mr. Kantrowitz (#168 at 2), and October 2014, when the references to Avid were removed from the website, (#177 at 10-11) does not matter. It is indisputable that Gobbler was negotiating with Avid during this time period and clearly informed Avid that it was redesigning its website and would remove the offending logos, etc. as soon as possible. *Id.*

The only remaining argument of Avid's to be considered, one that Avid raised for the first time in its reply to Gobbler's opposition to Avid's motion to compel, is that the court should order disclosure of privileged communications between Mr. Kantrowitz and his legal counsel because the communications go to his credibility. (#168 at 13.) In other words, because he said his attorneys told him something, Avid is entitled to find out if it is true by questioning his attorneys about the advice they gave him, to possibly demonstrate that he was lying. Avid

makes this argument without citing to a single case holding that testing the credibility of a witness is by itself a valid reason to breach the attorney-client privilege.  (#159 at 13; #168 at 13.)  It appears that the only way for Avid to pursue the matter would be to depose or pose interrogatories to all of Mr. Kantrowitz's attorneys to see who might have given him this advice.[4] "Taking depositions of opposing trial counsel is generally disfavored and discouraged." *In re Tyco Intern. Ltd.,* 2007 WL 2682763 (D.N.H. Sept. 7, 2007), citing *Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55, 66 (1st Cir. 2003) (procurement of trial testimony from opposing counsel generally disfavored).  The court will not take that extreme measure here.

### IV.  Communications by Mr. Edge

#### A.  Work-product privilege

The work-product doctrine, codified in Fed. R. Civ. P. 26(b)(3), is intended to preserve a "zone of privacy" within which a lawyer can prepare and develop legal theories and strategy "with an eye toward litigation."  *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947); *United States v. Textron, Inc. and Subsidiaries*, 577 F.3d 21, 25 (1st Cir. 2009).   Under this Rule, documents prepared by counsel, or at counsel's direction, in preparation for trial or in anticipation of litigation, are not discoverable absent a showing of substantial need, undue hardship, or inability to obtain their substantial equivalent by other means.

#### B.  Analysis concerning documents created by Mr. Edge

Avid  argues that the work product privilege does not apply to the notes that Mr. Edge passed to Attorney Boice, and even if it does apply, since Attorney Boice "incorporated the

---

[4] In addition to Heather Rafter, referred to as "day to day counsel" (#151 at 15) Gobbler also retained litigation counsel from two law firms (#180 at 9).

substance of the documents created by Mr. Edge into her questions," "public disclosure was made" and thus the privilege was waived. (#137 at 10.)  Avid cites *Koninklijke Philips Electronics Nv. v. Zoll Medication Corporation*, 2013 WL 812484 (D. Mass. Mar. 4, 2013) for the proposition that Attorney Boice made "public disclosure" of the notes. (#137 at 10.)  That case is inapposite.  There, the court found waiver where Zoll repeatedly and explicitly revealed test results in publicly-filed documents.  An attorney's consultation with a non-testifying expert during a deposition, one who has been specifically retained to assist an attorney understand highly technical information in formulating questions to a witness, is not the same as publishing test results on the public docket of a case.  There was no waiver of the work product privilege here.

Gobbler contends that the notes are protected by the work product privilege under Rule 26(b)(3)(A) because they were prepared for trial by Gobbler's representative consultant and also under Rule 26(b)(4)(D) as documents prepared by a non-testifying technical expert. (#207-1 at 4.)  A request for materials prepared by a non-testifying expert is analyzed under the standards set out in Rule 26(b)(4)(D), not the law of work product privilege.  *See In re Polymedica Corp. Securities Litigation*, 235 F.R.D. 28 (D. Mass. Apr. 7, 2006) (protection afforded non-testifying experts distinct from work-product doctrine); *Koninklijke, supra* at *2, citing *Fast Memory Erase, LLC, v. Spansion, Inc. et al.*, 2009 WL 4884091, at *1 (N.D. Tex. Dec. 16, 2009) (Rule concerning non-testifying expert "repudiates the notion that materials prepared by a non-testifying expert are privileged or constitute work product.").  Under Rule 26(b)(4)(D), the questions to be answered are whether Mr. Edge was retained in preparation for trial, whether Gobbler waived the protections of the rule by disclosing documents to Avid, and whether there

11

are "exceptional circumstances" justifying discovery of "facts known or opinions held" by such an expert. *In re Polymedica*, 235 F.R.D. at 33.

Here, there is no doubt that Mr. Edge was retained in anticipation of litigation; Gobbler did not "disclose" anything Mr. Edge said to Avid; and Avid has not demonstrated any exceptional circumstances.

Avid also argues that because Mr. Edge works for the same company as Geoff A. Cohen, who is a testifying expert for Gobbler and has produced an expert report, any information Mr. Edge "exchanged" with Dr. Cohen is discoverable under Rule 26(a)(2)(B). (#196-2 at 1-3.) Obviously, Dr. Cohen's report must conform to the Rule, so that, for example, he must disclose facts and data considered by him in forming his opinions, and Gobbler states that his report does conform to the Rule.  (#207-1 at 3.)   Avid has not demonstrated that the notes or any other materials requested are discoverable.

### V.  Conclusion

For the above reasons, Avid's Motion to Compel, including the motion for expenses, (#136) is denied.

/s/ M. Page Kelley
M. Page Kelley
United States Magistrate Judge

February 18, 2016